Stanley BERG, Berg Investments, Inc., an Indiana corporation, d/b/a The Body Works, PFW, Inc., an Indiana corporation, et al., Plaintiffs,

v.

The HEALTH & HOSPITAL CORPORATION OF MARION COUNTY, INDIANA, Defendant.

No. IP 86–442–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 25, 1987.

Jeffrey A. Been and Richard Kammen, Indianapolis, Ind., for plaintiffs.

Richard M. Knoth, David T. Kasper and Susan Mann, Health & Hosp. Corp. of Marion County, Indianapolis, Ind., for defendant.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on cross-motions for summary judgment. For the following reasons, the plaintiffs' motion is denied and the defendant's motion is granted.

### Background

In February 1986, the Board of Trustees of The Health and Hospital Corporation of Marion County ("Health & Hospital") adopted General Ordinance No. 5–1985(A) in response to concern over the increasing public health threat of acquired immune deficiency syndrome (AIDS). The parts of the ordinance that regulate the structure of business premises, codified at Chapter 19 of the Health and Hospital Corporation Code, are as follows:

### Legislative Finding.

Sec. 19–101.1. It is hereby further found that there exist within Marion County, Indiana, commercial premises, commercial structures or parts thereof, which by reason of the design, and intended use of such premises or structures or parts thereof are conducive to the spread of communicable disease found to be of danger to persons frequenting such premises, structures, or parts thereof, and to the public health, safety and welfare. The health, safety and welfare of all persons in Marion County must be protected by the establishment of standards for such premises, structures, or parts thereof, to eliminate the possibility of infection of contagious disease. Of specific danger is the sexually transmissable (sic) disease of Acquired Immune Deficiency Syndrome, which is currently found to be irreversible and uniformly fatal. The incidence of this disease is found to occur in discernible population groups, and the risk factors for obtaining or spreading the disease are associated with high-risk sexual conduct with multiple partners. The commercial premises, structures, or parts thereof, which place persons at risk of infection from this disease due to their design or intended use for high-risk sexual conduct, are necessarily subject to regulation and minimal standards for the prevention of the spread of this disease and for the protection of the public health, safety and welfare.

Sec. 19–309. No commercial building, structure, premises or subdivision, partition, portion or part thereof or facilities therein, shall be so constructed, used, or operated for the purpose of sexual activities, in which facilities high-risk sexual conduct takes place. No commercial building, structure, premises or subdivision, partition, or portion shall be designed for or used to promote high-risk sexual conduct.

Sec. 19–310. In exercising powers conferred by this, or any other, section of the Code relating to communicable disease, the health officer shall be guided by the most recent instructions, opinions and guidelines of the Center for Disease Control of the United States Department of Health and Human Services which relate to the spread of infectious diseases and any regulations which may be adopted by this Board which relate to controlling the spread of infectious diseases.

Sec. 19–311. Minimum standards for prevention of certain communicable diseases in commercial premises.

No person shall occupy any commercial building, structure, premises, or portion or part thereof, which does not comply with the following requirements:

(a.) For the prevention of the spread of sexually transmitted disease, no partitions between subdivisions of a room, portion or part of a building, structure or premises may have an aperture which is designed or otherwise constructed to encourage sexual activity between persons on either side of the partition.

(b.) No booths, stalls, or partitioned portions of a room, or individual rooms, used for the viewing of motion pictures or other forms of entertainment, shall have doors, curtains or portal partitions, but all such booths,

stalls, partitioned portions of a room, or individual rooms so used shall have at least one side open to an adjacent public room so that the area inside is visible to persons in the adjacent public room. All such described areas shall be lighted in such a manner that the persons in the areas used for viewing motion pictures or other forms of entertainment are visible from the adjacent public rooms, but such lighting shall not be of such intensity as to prevent the viewing of the motion pictures or other offered entertainment.

(c.) No commercial building, structure or premises shall be so constructed that private rooms or accommodations can be offered to patrons of that business operated therein if:

(1.) The building, structure or premises is in violation of Sec. 19–309, above and

(2.) The building, structure or premises is not a validly operating hotel, motel, apartment complex or condominium.

Health & Hospital cited plaintiff PFW, Inc. ("PFW"), in March 1986 for violating sections 19–311(a) and (b) of the ordinance. PFW is a business that offers to its customers private viewings of motion pictures.

Shortly thereafter, PFW, along with plaintiffs Stanley Berg and Berg Investments, Inc., a business which offers customers private relaxation and entertainment rooms, filed suit seeking an injunction against enforcement of the ordinance and a declaratory judgment that sections 19–101.-1, 19–309, 19–310, and 19–311(b) and (c) are unconstitutional as overbroad, vague, and prior restraints, and that the ordinance violates plaintiffs' rights under the First and Fourteenth Amendments to the Constitution.

Draix, Inc., Annex Adult Books, Inc., Shadeland Avenue Adult Bookstore, and Keystone Avenue Adult Books are Marion County businesses that were notified by Health & Hospital in the spring of 1986 that they were in violation of section 19–311(b) of the ordinance. The Court has granted their petitions to intervene as plaintiffs.

In June 1986, plaintiffs moved for a summary judgment declaring specific sections of the ordinance unconstitutional, and stated that the gravamen of their complaint is that section 19–311(b) is unconstitutional on its face.

In October 1986, Health & Hospital trustees adopted the following Health Officer Regulations "to help administer and enforce" section 19–311(b):

SECTION 19–311(b):

(1) The words "booth, stalls, partitioned portions of a room or individual rooms" mean such enclosures as are specifically offered to the public or members of that establishment for hire or for a fee as part of a business operated on the premises which offers as part of its business the entertainment to be viewed within the enclosure; which shall include, without limitation, such enclosures wherein the entertainment is dispensed for a fee, but a fee is not charged for mere access to the enclosure.

(2) The words "booth, stalls, partitioned portions of a room or individual rooms" do not mean such enclosures that are private offices used by the owners, managers or persons employed on the premises for attending to the tasks of their employment, which enclosures are not held out to the public or members of the establishment for hire or for a fee or for the purpose of viewing entertainment for a fee, and are not open to any persons other than employees.

(3) The words "doors, curtains or portal partitions" mean full, complete, nontransparent closure devices through which one cannot see or view the activity taking place within the enclosure.

(4) The words "open to an adjacent public room so that the area inside is visible to persons in the adjacent public room" shall mean either the absence of any "door, curtain or portal partition" or a door or other device

which is made of clear, transparent material such as glass, plexiglass or other such material meeting building code and safety standards, extending from the floor to the top of the door frame, exclusive of the door or device framing itself, so that the activity inside the enclosure may be viewed or seen by persons outside the enclosure.

In March 1987, defendant Health & Hospital moved for a summary judgment declaring the ordinance constitutional.

## Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). Both parties to this lawsuit assert that there is no genuine issue of material fact and that the case may be decided as a matter of law. The Court agrees.

■ Plaintiffs first argue that Ordinance 5-1985(A) is an unconstitutional prior restraint of speech. Scrutiny of a regulation as a prior restraint occurs where "public officials [have] the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448, 456 (1975). In this case, however, there is no licensing or permit requirement at issue, nor do any public officials review in any manner the entertainment being offered. There is no restriction on plaintiffs' making available to their patrons whatever films, videotapes or entertainment they wish to. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310, 321 (1976). The ordinance does not ban the viewing of films or other entertainment, but merely regulates the environment in which the viewing occurs. As in *Young*, 427 U.S. at 52-63, 96 S.Ct. at 2448-49, 49 L.Ed.2d at 321-22, the Court here finds that there is simply no prior restraint. *See also Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486, 490 n. 2 (E.D.Tenn.1986) (open

booth requirement does not constitute prior restraint).

Regarding plaintiffs' contention that Health & Hospital's authority to close businesses found to be in violation of the ordinance constitutes a prior restraint, this Court is guided by the recent Supreme Court opinion in *Arcara v. Cloud Books, Inc.*, —— U.S. ——, ——, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986). There, the Court found prior restraint analysis inapplicable to closure of a bookstore that violated a public health law. *Id.* at ——, 106 S.Ct. at 3177 n. 2, 92 L.Ed.2d at 577 n. 2. Here, as in *Arcara*, any closure order "would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with any expressive conduct at all." *Id.*

Plaintiffs' second argument is that the ordinance as originally adopted is unconstitutionally overbroad. They contend that the ordinance could require removal of doors from rooms in all commercial premises, including taverns, movie theaters, hotel rooms, hospital rooms—indeed from any private office with a television set—thereby possibly inhibiting First Amendment activities totally unrelated to the transmission of AIDS. The Supreme Court has declared that in circumstances like those at issue here, "where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830, 842 (1973).

■ Applying this standard to the present case, the Court notes that the Health Officer Regulations adopted in October 1986 define certain terms in section 19-311(b) of the ordinance and specifically exclude application of the ordinance to private business offices. Additionally, section 19-311(c)(2) of the original ordinance excludes application to hotels and motels. The October regulation read together with the original ordinance limits application of the prohibition of doors provision to only private or individual enclosures in which

entertainment is "sold" as part of a business on commercial premises. The Court finds that the regulation effectively cures whatever overbreadth may have characterized the original ordinance. Like a similar local ordinance upheld against an overbreadth attack in Tennessee, *see Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486, 490 n. 2 (E.D.Tenn.1986), the Marion County regulation is now narrowly focused at the types of structures that facilitate multiple, anonymous sexual encounters, while not unduly restricting the sale of entertainment or other First Amendment activities.

■ In addition to their claims of overbreadth, plaintiffs argue that Ordinance 5–1985(A) is unconstitutionally vague, primarily because it does not clearly define the particular commercial premises to which it applies, leaving this determination to the discretion of enforcement officers. An ordinance will not be found unconstitutionally vague if it "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and provides "explicit standards" for enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227 (1972). While the original ordinance may have been vulnerable to an allegation of vagueness, the Court finds that the October 1986 regulations clarifying which business premises are affected and defining other key terms effectively correct any vagueness of the original ordinance. Read together, the ordinance and the regulations describe in great detail what is prohibited in the way of doors on individual entertainment enclosures. The regulation limits application of the ordinance to businesses that offer as part of their business "the entertainment to be viewed within the enclosure." While the term "entertainment" is arguably general, the Court finds that persons of ordinary intelligence would be able to identify circumstances in which entertainment is offered in a business context in a private or individual booth or enclosure and is therefore subject to the ordinance.

■ The Court also finds that the disputed sections of Ordinance 5–1985(A) and its accompanying regulations do not unconstitutionally infringe on plaintiffs' First Amendment rights. Because the ordinance as narrowed by Regulation 19–311(b)(1) is targeted at businesses that sell entertainment, First Amendment concerns are implicated. *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1168 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1245 (9th Cir.1982); *see also Arcara v. Cloud Books, Inc.*, ⸺ U.S. ⸺, ⸺ ‑ ⸺, 106 S.Ct. 3172, 3177–78, 92 L.Ed.2d 568, 578 (1986) (First Amendment analysis appropriate where statute targets those engaged in expressive activity). Like similar "no door" ordinances analyzed by the Fourth Circuit in *Wall Distributors*, 782 F.2d at 1168, and by the Ninth Circuit in *Ellwest*, 681 F.2d at 1245, the Marion County ordinance and regulations are content neutral; they do not regulate speech based on the content of the entertainment, but rather are aimed at its secondary effects—multiple anonymous sexual encounters that facilitate the spread of AIDS.

The ordinance is therefore properly analyzed as a time, place, or manner regulation of expressive activity. According to the Supreme Court, such a regulation will be upheld if it "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, ⸺, 106 S.Ct. 925, 930, 89 L.Ed.2d 29, 39 (1986); *see also Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984); *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 648–54, 101 S.Ct. 2559, 2564–67, 69 L.E. 2d 298, 306–11 (1981).

Health & Hospital clearly has a substantial interest in decreasing the spread of AIDS in Marion County. When the Health & Hospital Corporation trustees adopted Ordinance 5–1985(A), they had before them information about the incidence of AIDS in the county, its rapid increase in other cities, its incurable, fatal nature, its transmission via multiple, anonymous sexual encounters, and about the casual sexual activity, includ-

ing anal intercourse, observed in the types of local establishments sought to be regulated. The Court finds this evidence more than sufficient to show that the ordinance was designed to serve a substantial governmental interest. Contrary to plaintiffs' assertions, Health & Hospital is not required to document the specific transmission of AIDS within Marion County before acting to control the disease. "The First Amendment does not require a city, ... to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, ——, 106 S.Ct. 925, 931, 89 L.Ed.2d 29, 40 (1986).

The ordinance and regulations also allow for reasonable alternative avenues of communication. The prohibition of doors is at most a minimal intrusion on plaintiffs' offering and their patrons' viewing of entertainment. It in no way restricts what entertainment is available or the business hours or location. As the Fourth Circuit observed about a similar local Virginia regulation, "The open booth regulation appears to be the least burdensome means of controlling offensive and illegal activity within booths that can be imagined." *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1170 (4th Cir.1986). The Court therefore finds that sections 19–101.1, 19–309, 19–310, and 19–311(b) and (c) as modified by Regulation 19–311(b) are constitutional.

For the foregoing reasons, the plaintiffs' motion for summary judgment must be denied and the defendant's motion for summary judgment must be granted.

### JUDGMENT

The Court having this day filed its entry in the above captioned matter in the following words and figures: (H.I.), now therefore, in accordance therewith,

IT IS CONSIDERED AND ADJUDGED that sections 19–101.1, 19–309, 19–310, and 19–311(b) and (c) of the Code of the Health and Hospital Corporation of Marion County, Indiana, as modified by Health Officer Regulation section 19–311(b) are constitutional, and that plaintiffs are not entitled to any declaratory relief or injunctive relief.