Town of Islip, Respondent, v Frank Caviglia et al., Doing Business as Happy Hour Bookstore, Appellants.

Second Department, September 26, 1988

APPEARANCES OF COUNSEL

*Bernard Fromartz* for appellants.

*Guy W. Germano, Town Attorney (Michael J. Cahill* and *Doris E. Roth* of counsel), for respondent.

## OPINION OF THE COURT

SPATT, J.

█ The issue on this appeal is the constitutionality of an ordinance of the Town of Islip that relegates the location of an adult bookstore to the town's Industrial I zoning district. Since we find that this ordinance is not aimed at the content of the books sold but is in the nature of a time, place and manner restriction, we hold that the ordinance is constitutionally permissible.

### I

In 1978, the respondent Frank Caviglia (doing business as Happy Hour Bookstore) opened an adult bookstore (hereinafter the bookstore) at 30 West Main Street, Bay Shore, in the Town of Islip in Suffolk County. Thereafter, the Town of Islip Community Development Agency condemned the building in which the bookstore was located. As a consequence, on June 12, 1980, the bookstore was moved across the street to its present location at 33 West Main Street. The latter parcel of real property is owned by the appellants Caviglia and Steven Weinkselbaum.[1] The bookstore was then and is now situated in an area zoned Business I as defined in the Islip Town Code.

In 1980, the Town of Islip (hereinafter the town), in response to a public outcry opposed to so-called "adult businesses", conducted a study on the effects of such establishments upon surrounding residential and commercial areas. This study consisted of an individual site analysis of "adult businesses" throughout the town, including the subject bookstore, and a review of studies and ordinances of other jurisdictions which utilized zoning ordinances to regulate adult businesses. Following the research period, it was determined that the town would base its adult-use ordinance on rulings by the United States Supreme Court and other courts and on the

---

1. The record is unclear as to whether the appellant Steven Weinkselbaum is a co-owner of the bookstore or if his involvement in the action derives solely from the ownership of the real property upon which the bookstore is presently located.

Detroit Anti-Skid Row Ordinance which dispersed so-called "sex-related businesses" *(see, Young v American Mini Theatres,* 427 US 50, *reh denied* 429 US 873).

On September 23, 1980, a public hearing was held to consider the addition to the Islip Town Code of an adult-use ordinance.[2] At the hearing, the proposed ordinance (§ 68-341.1)

---

**2.** The proposed ordinance, which was later enacted by the Islip Town Board, in its entirety, provides as follows:

"§ 68-341.1. Adult uses. [Added 9-23-80]

"Adult uses shall be allowable in an Industrial 1 District only as a special exception by the Board of Appeals after public hearing.

"A. Purposes and considerations.

"(1) In the execution of this ordinance it is recognized that there are some uses which, due to their very nature, have serious objectionable characteristics. The objectionable characteristics of these uses are further heightened by their concentration in any one area, thereby having deleterious effects on adjacent areas. Special regulation of these uses is necessary to ensure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhoods or land uses.

"(2) It is further declared that the location of these uses in regard to areas where our youth may regularly assemble and the general atmosphere encompassing their operation is of great concern to the Town of Islip.

"(3) These special regulations are itemized in this section to accomplish the primary purposes of preventing a concentration of these uses in any one area and restricting their accessibility to minors.

"B. Definitions. As used in this ordinance, the following terms shall have the meanings indicated:

"ADULT BOOKSTORE—An establishment having as a substantial or significant portion of its stock-in-trade books, magazines, other periodicals, films, slides and video tapes and which establishment is customarily not open to the public generally but excludes any minor by reason of age.

"ADULT DRIVE-IN THEATER—A drive-in theater that customarily presents motion pictures that are not open to the public generally but excludes any minor by reason of age.

"ADULT ENTERTAINMENT CABARET—A public or private establishment which presents topless dancers, strippers, male or female impersonators or exotic dancers, or other similar entertainments, and which establishment is customarily not open to the public generally but excludes any minor by reason of age.

"ADULT MOTEL—A motel which is not open to the public generally but excludes minors by reason of age, or which makes available to its patrons in their rooms films, slide shows or videotapes, which if presented in a public movie theater would not be open to the public generally but would exclude any minor by reason of age.

"ADULT THEATER—A theater that customarily presents motion pictures, films, videotapes or slide shows, that are not open to the public generally but exclude any minor by reason of age.

"MASSAGE ESTABLISHMENT—Any establishment having a fixed place of business where massages are administered for pay, including but not limited to massage parlors, sauna baths and steam baths. This definition shall not

was detailed by Eugene Murphy, a planner in the Town Department of Planning and Development. Mr. Murphy ex-

be construed to include a hospital, nursing home or medical clinic or the office of a physician, surgeon, chiropractor, osteopath or duly licensed physical therapist or barbershops or beauty salons in which massages are administered only to the scalp, face, neck or shoulders. This definition also shall exclude health clubs which have facilities for physical exercise, such as tennis courts, racquetball courts or exercise rooms, and which do not receive their primary source of revenue through the administration of massages.

"PEEP SHOWS—A theater which presents material in the form of live shows, films or videotapes, viewed from an individual enclosure, for which a fee is charged and which is not open to the public generally but excludes any minor by reason of age.

"C. The adult uses as defined in Subsection B above are to be restricted as to location in the following manner in addition to any other requirements of this Code.

"(1) Any of the above uses shall not be located within a five-hundred-foot radius of any area zoned for residential use.

"(2) Any of the above uses shall not be located within a one-half-mile radius of another such use.

"(3) Any of the above uses shall not be located within a five-hundred-foot radius of any school, church or other place of religious worship, park, playground or playing field.

"D. The restrictions enumerated in Subsection C above may be waived by the Town Zoning Board of Appeals if the applicant shows and the Board finds that the following conditions have been met in addition to the general conditions contained in Article XXXIII of this ordinance:

"(1) That the proposed use will not be contrary to the public interest or injurious to nearby properties and that the spirit and intent of this ordinance will be observed;

"(2) That the establishment of an additional use of this type in the area will not be contrary to any program of neighborhood conservation or improvement, either residential or nonresidential; and

"(3) That fifty-one percent (51%) or more of the property owners within the restricted area as defined in Subsection C (1) of this section have signed a petition stating that they have no objection to the establishment of one of the uses defined above.

"E. No more than one (1) of the adult uses as defined above shall be located on any lot.

"F. By amortization, the right to maintain a legal non-conforming adult use shall terminate in accordance with the following schedule:

| "Amount of Capital Investment* as of the Effective Date of this Ordinance | Date Before Which Use Shall Terminate |
|---|---|
| 0 to 5,000 | January 1, 1982 |
| 5,001 to 8,000 | January 1, 1983 |
| 8,001 to 15,000 | January 1, 1984 |
| 15,001 to 22,000 | January 1, 1985 |
| 22,001 or more | January 1, 1986 |

plained that the purpose of the ordinance was "to reduce the destructive impact of Adult uses on neighborhoods and prevent further ones". He also discussed the prospective location of "adult businesses", as follows:

"We feel the proper zone is an Industrial one, after special exception of the Board of Appeals. The reason for 'Industrial' is that it should be generally removed from residences because it has an adverse effect on residential and business as well.

"With a Shopping Center, it tends to attract a wide marginal use such as: Bars, Lodging Houses, and Porno Book Stores. What we have seen is . . these uses tend to pull together so that the overall effect is much worse. It is not the Use, itself, but what it attracts, and you get Skid Row effect in a business area".

Regarding the definition of "adult uses", Murphy explained that in formulating similar ordinances, other legislative bodies throughout the Nation had experienced difficulty in defining "sex" and "adult" uses. A decision was eventually made to define an "adult use" establishment as one which excludes "any minor by reason of age", and thereby avoid making difficult determinations as to what is pornographic and what is not pornographic. Following the hearing on September 23, 1980, the Islip Town Board unanimously approved the enactment of section 68-341.1. After the passage of this ordinance, the bookstore continued to operate as a legal nonconforming adult use subject to the amortization provisions of the ordinance (see, Islip Town Code § 68-341.1 [F] which established a five-year graduated termination date for nonconforming adult uses, depending upon the amount of capital investment).

More than four years later, on February 21, 1985, William Heffernan, an investigator in the Law Enforcement Division of the office of the Town Attorney of the Town of Islip, visited the Happy Hour Bookstore. As he approached the premises, Mr. Heffernan observed a prominently displayed sign stating, "You must be 21 years or older to enter". In the store, he observed a quantity of books and periodicals of a sexually oriented nature offered for sale.

Following this inspection, in March of 1985, the town commenced this suit to permanently enjoin the appellants from

---

"* NOTE: The term 'capital investment', as used above, is defined to mean the initial outlay by the owner or operator of the use to establish the business as of the date of the enactment of the ordinance, exclusive of the fair market value of the structure in which the use is located."

operating the subject premises as an adult bookstore. In the interim, the town sought a preliminary injunction precluding such use of the premises. Its petition alleged the following:

1. The bookstore was an "Adult bookstore" within the meaning of section 68-341.1 (B) of the Town Code;

2. The bookstore was being operated in an area zoned "Business I", which was violative of Town Code § 68-271; and

3. The appellants' preexisting right to a legal nonconforming adult use had terminated pursuant to section 68-341.1 (F) as of January 15, 1985, if not sooner.

Both the town and the appellants moved for summary judgment. In support of their motion, the appellants argued that:

1. The bookstore was being operated pursuant to a valid nonconforming use which predated the ordinance.

2. The zoning ordinance was vague and contravened NY Constitution, article I, § 6 and § 8.

3. The ordinance constituted a prior restraint in violation of the State Constitution with regard to the bookstore.

In an order dated June 26, 1985, the Supreme Court, Suffolk County (Balletta, J.), denied the town's motion for a preliminary injunction and denied both the motion and the cross motion for summary judgment, finding that "[n]either party [had] presented sufficient evidence to direct judgment in their favor". Justice Balletta went on to dismiss the appellants' "void for vagueness" defense, stating "[s]ince the [appellants admit] that [t]he[y] [are] operating an adult bookstore in violation of the ordinance, it is clear that the ordinance applies to [them] and [t]he[y] may not challenge it on the basis of vagueness. Neither [do they] have standing to challenge it on behalf of third persons *Wigginess, Inc. v. [Fruchtman]*, 482 F. Supp. 681, aff'd 628 F. 2d 1346 *[, cert denied* 449 US 842]". By notice of appeal dated July 23, 1985, the appellants appealed from so much of Justice Balletta's order as denied their motion for summary judgment "and [did] not appeal from any other part of the [order] except as herein specifically set forth". That appeal was never perfected.

The parties then sought a determination, based upon stipulated facts submitted pursuant to CPLR 3222, as to the constitutionality of the subject zoning ordinance. In a decision dated July 29, 1987, the Supreme Court, Suffolk County (Saladino, J.), found that the ordinance was constitutionally valid on its face and represented a proper exercise of the

Town of Islip's zoning power. The court declined to address the appellants' claim that the statute was "void for vagueness", stating that Justice Balletta's June 26, 1985 decision was the law of the case. In addition, the court rejected the appellants' challenge to the five-year amortization clause contained in the ordinance.

On September 15, 1987, an order and judgment (one paper) was made permanently enjoining the appellants from operating the Happy Hour Bookstore as an "adult bookstore" as defined in section 68-341.1 (B) of the Islip Town Code. This court granted a stay of the order and judgment pending the outcome of this appeal.

## II

The crux of the appellants' argument on appeal is that the subject adult-use ordinance is constitutionally infirm, in that the ordinance constitutes a content-based prior restraint upon free speech in violation of NY Constitution, article I, § 8. In opposition, the town contends that, based upon the test set forth by the United States Supreme Court in *Renton v Playtime Theatres* (475 US 41), the ordinance is a valid time, place and manner restriction which is violative of neither the Federal nor the State Constitutions.

The issue presented must be resolved within the context of three pertinent decisions of the United States Supreme Court. In *Young v American Mini Theatres* (427 US 50, *reh denied* 429 US 873, *supra),* the court upheld as constitutional an "Anti-Skid Row Ordinance" which provided, *inter alia,* that an adult theater could not be located within 1,000 feet of any two other "regulated uses," or within 500 feet of a residential area. "Regulated uses" included adult bookstores and theaters, cabarets, bars, dance halls and hotels which were restricted to adults. Reasoning that the lines drawn by the ordinance were justified by the city's interest in preserving the character of its neighborhoods and that ultimately what was at stake was "nothing more than a limitation on the place where adult films may be exhibited", the court held that the ordinance was not violative of the Equal Protection Clause of the Fourteenth Amendment *(Young v American Mini Theatres, supra,* at 71-73).

In *Schad v Mount Ephraim* (452 US 61), the court struck down, as violative of the First and Fourteenth Amendments, an ordinance prohibiting all live entertainment in a commer-

cial zone. Pursuant to this ordinance, the borough sought to preclude live nude dancing at an establishment where adult films were viewed. Distinguishing *Schad* from *Young v American Mini Theatres (supra)*, the court concluded that the Borough of Mount Ephraim had "not adequately justified its substantial restriction of protected activity" *(Schad v Mount Ephraim, supra,* at 72), or proven that "its interests could not be met by restrictions that are less intrusive on protected forms of expression" *(Schad v Mount Ephraim, supra,* at 74). Because the ordinance constituted an absolute ban on commercial live entertainment while permitting a variety of other commercial uses and did not "leave open adequate alternative channels of communication," the court also rejected the claim that the ordinance was a reasonable time, place and manner restriction *(Schad v Mount Ephraim, supra,* at 75-76).

In *Renton v Playtime Theatres* (475 US 41), the appellants purchased two theaters in Renton, Washington, with the intention of showing adult films, and commenced a lawsuit in the Federal District Court, challenging a city ordinance that prohibited adult movie theaters from locating within 1,000 feet of any residential zone, single or multiple family dwelling, church, park or school. The District Court held that the ordinance did not violate the First Amendment. The Ninth Circuit Court of Appeals reversed in part and remanded for a determination as to whether the city had substantial governmental interests to support the ordinance. In an opinion by Justice Rehnquist, the Supreme Court reversed the Ninth Circuit, holding that the ordinance was a valid governmental time, place and manner restriction enacted in response to "serious problems" created by adult theaters *(Renton v Playtime Theatres, supra,* at 46, 54). Relying heavily upon its prior decision in *Young v American Mini Theatres (supra)*, the court set forth the following three-element test to determine whether the ordinance could withstand constitutional scrutiny:

1. Was the ordinance aimed at the content of the films shown at adult movie theaters or at the secondary effects of such theaters on the surrounding community?

2. Was the ordinance designed to serve a substantial governmental interest?

3. Does the ordinance allow for reasonable alternative avenues of communication?

Applying these standards, the court held that the ordinance

was content-neutral and, by its terms, was designed to fulfill the City of Renton's substantial interest in protecting the community and the quality of its urban life. The court further concluded that the ordinance allowed for reasonable alternative avenues of communication, in that some 520 acres (or more than 5% of the entire land area of Renton) was open to use as adult theater sites. Relevant to the forced relocation of the adult theaters, the court stated: "That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have 'the effect of suppressing, or greatly restricting access to, lawful speech,' *American Mini Theatres,* 427 U.S., at 71, n. 35 (plurality opinion), we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices * * * In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement" *(Renton v Playtime Theatres, supra,* at 54).

The *Renton* test has subsequently been applied with varying results to a number of local ordinances which created various restrictions on adult establishments.

In *Christy v City of Ann Arbor* (824 F2d 489, *cert denied —* US —, 98 L Ed 2d 978), the zoning ordinance restricted adult bookstores to a district which totaled only .058 square miles and contained only .23 of 1% of the land area of the City of Ann Arbor (as contrasted with the 520 acres and 5% of the land area involved in the City of Renton ordinance). The Sixth Circuit remanded the case to the District Court to determine whether the permitted geographic boundaries were too limited so as to severely restrict First Amendment expression. The court also vacated the District Court's finding of a substantial governmental interest, since the record not only failed to reveal any evidence of such studies but lacked even an allegation by the city that the zoning ordinance was to prevent resultant urban blight.

In *Berg v Health & Hosp. Corp.* (667 F Supp 639), a business offering customers private viewings of motion pictures was cited by the defendant for violating a city ordinance designed to decrease the spread of AIDS. The ordinance set forth

minimum standards regulating rooms, booths or stalls in commercial premises which place persons at risk of infection from AIDS due to their design or intended use for high risk sexual conduct. Applying *Renton,* the District Court rejected a challenge to the subject ordinance, concluding that the ordinance was a constitutional time, place and manner restriction which was designed to serve a substantial governmental interest.

In other Federal cases, the challenged ordinances failed to satisfy the elements of the *Renton* test. For example, in *Tollis Inc. v San Bernardino County* (827 F2d 1329), the operator of an adult movie and live entertainment establishment commenced an action challenging the constitutionality of an ordinance prohibiting the location of adult-oriented businesses within 1,000 feet of residential land use and other business and residential establishments. Applying the *Renton* test, the Ninth Circuit concluded that the ordinance was unconstitutional because the county "failed to show that the ordinance [was] * * * sufficiently ' "narrowly tailored" to affect only that category of theaters shown to produce the unwanted secondary effects' " *(Tollis Inc. v San Bernardino County, supra,* at 1333). Moreover, the court found it "difficult to imagine that only a single showing ever, or only one in a year, would have any meaningful secondary effects" *(Tollis Inc. v San Bernardino County, supra,* at 1333).

The *Renton* test has also been applied in other State jurisdictions to determine the constitutionality of similar adult-use ordinances. In a recent Illinois case involving an ordinance remarkably similar to the one at issue in the instant case, the Supreme Court of Illinois applied the *Renton* test and upheld as constitutional an ordinance allowing adult-use businesses to be located only in specified zoned areas *(Cook County v Renaissance Arcade & Bookstore,* 122 Ill 2d 123, 522 NE2d 73). The ordinance in *Cook County v Renaissance Arcade & Bookstore* contained the following provisions:

1. Not more than two adult uses are permitted to be established within 1,000 feet of each other in a commercial zone;

2. A special use application requires a public hearing before the Zoning Board of Appeals and a decision by the Board of Commissioners;

3. An amortization provision providing for a six-month amortization of nonconforming uses; and

4. A requirement that such adult uses be greater than 500 feet from a residential or religious area or structure.

It was determined that 78 industrially zoned areas were available for adult uses, as a matter of right, in accord with the challenged ordinance. These areas were scattered throughout the county and ranged from several to almost 100 acres. The Supreme Court of Illinois held that the ordinance "provides a reasonable number of alternative sites and does not unconstitutionally suppress the defendants' free speech rights or unconstitutionally limit access to protected materials" *(Cook County v Renaissance Arcade & Bookstore, supra,* 122 Ill 2d, at —, 522 NE2d, at 80). The court also upheld the amortization provision contained in the ordinance.

In *City of St. Paul v Carlone* (419 NW2d 129, 132), a zoning ordinance which required that adult-use businesses be adequately spaced to prevent potential harm to city neighborhoods was held to be facially constitutional under the *Renton* standard of "content neutral" time, place and manner regulations.

In *5297 Pulaski Highway v Town of Perryville* (69 Md App 590, 519 A2d 206, *cert denied* 309 Md 521, 525 A2d 636), the challenged zoning ordinance restricted adult bookstores to certain prescribed zones, imposed other geographic restrictions and, even in such a restricted zone, required the adult bookstore to satisfy the town's Board of Appeals with respect to 13 listed criteria. In holding that the *Renton* test was satisfied and that the ordinance was facially constitutional, the court's decision included the following relevant statements:

"We think the record supports Perryville's assertion that Ordinance 84-1 was designed to serve a substantial government interest. '(A town's) interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' *Young v American Mini Theatres,* 427 U.S. at 71, 96 S. Ct. 2440, 49 L.Ed.2d 310 * * *

"The record does not reflect that Perryville enacted Ordinance 84-1 as a pretext to suppression of protected expression. Rather in the interest of preserving the general welfare of the community, the town established a procedure whereby adult bookstores are permitted as conditional uses in certain areas * * *

"Perryville Ordinance No. 84-1 is facially predicated upon a fundamental governmental interest in protecting the general welfare of the community. Adult bookstores are regulated, not

proscribed. The ordinance was not directed toward the suppression of speech" *(Pulaski Highway v Town of Perryville, supra,* 69 Md App, at 595-596, 597, 519 A2d, at 209-210; *see also, Book-Cellar v City of Phoenix,* 150 Ariz 42, 721 P2d 1169 [zoning ordinance prohibiting the location of adult businesses within 500 feet of a residential zone upheld as a constitutionally valid time, place and manner restriction]).

Applying the *Renton* test to the facts of this case, we conclude that the Town of Islip ordinance limiting the location of adult uses to the Industrial I district is a valid time, place and manner restriction. First, it is clear from the record that the subject ordinance, which was enacted after extensive studies, is not aimed at the content of the books but, rather, at the effect of the bookstore upon the community and its quality of life. Second, the ordinance is designed to serve a substantial governmental interest; namely, to prevent the type of "skid row" environment caused by proliferation of sex-oriented businesses, and its purpose is to preserve the quality of life in its business community.

As to the third *Renton* element, it is evident that the ordinance at issue provides reasonable alternative locations within the town for adult-use establishments. The record reveals that the town contains over 6,000 acres of land zoned Industrial I scattered throughout the town in various stages of development. The Industrial I area includes a total of 85.6 miles of running footage on open roads. Approximately 12 miles of running footage on open roads are situated on lots over 500 feet from a church, school playground, park or residential zone *(cf., Basiardanes v City of Galveston,* 682 F2d 1203, a pre-*Renton* case in which the adult theaters were restricted to industrial zones which were "largely a patchwork of swamps, warehouses and railroad tracks" and lacked access roads). We therefore find that there is sufficient Industrial I property dispersed throughout the Town of Islip so that the town does provide the bookstore with alternative locations.

### III

Our conclusion that the Town of Islip adult-use ordinance passes constitutional muster does not conclude with the application of the test promulgated by the United States Supreme Court in *Renton* (475 US 41, *supra).* It has long been recognized that while courts of this State are bound by decisions of the Supreme Court in matters of Federal law, in determining

the scope and effect of individual fundamental rights under the New York State Constitution, we are bound to exercise our independent judgment and are not constrained by decisions of the Supreme Court limiting the scope of similar guarantees under the Federal Constitution. The New York State Court of Appeals has applied the New York State Constitution, in both civil and criminal matters, to invoke a broader scope of protection than that accorded by the Federal Constitution in various cases concerning individual rights and liberties *(see, e.g., People v P. J. Video,* 68 NY2d 296, *cert denied* 479 US 1091 [involving the probable cause standard in a warrant application authorizing the seizure of video cassette films as evidence that the defendants were promoting obscenity]; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553 [closing a bookstore to curtail the illegal acts of its customers affects the store's constitutional right to freedom of expression so as to require the State to show that it is the only means available to abate the nuisance]; *Rivers v Katz,* 67 NY2d 485, *rearg denied* 68 NY2d 808 [the right of involuntarily committed mental patients to refuse antipsychotic medication]; *Bellanca v New York State Liq. Auth.,* 54 NY2d 228, *cert denied* 456 US 1006 [a blanket ban on topless dancing declared violative of the New York State Constitution]; *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152 [statutory provisions permitting ex parte foreclosure of a garageman's possessory lien declared violative of the due process provision of the State Constitution]; *People v Barber,* 289 NY 378 [an ordinance prohibiting peddling held not applicable to members of religious organization who sold bibles without individual profit]).

"In determining whether to exercise independent judgment under the New York State Constitution to provide greater protection than the due process floor set by the Supreme Court, we first look to the texts of the Constitutions" *(People v Kohl,* 72 NY2d 191, 197). NY Constitution, article I, § 8 provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

US Constitution article I expresses the right of free speech in the following language: "Congress shall make no law * * * abridging the freedom of speech, or of the press ".

Although both documents prohibit laws abridging freedom of speech, the New York Constitution includes the additional language that "every citizen may freely speak, write and

publish his sentiment on all subjects". In light of this difference, we proceed to the second step of the analysis; i.e., an examination of the historical basis for the distinction *(People v Kohl, supra)*. In this regard, the New York Court of Appeals has recently stated: "Freedom of expression in books, movies and the arts, generally, is one of those areas in which there is great diversity among the States. Thus it is an area in which the Supreme Court has displayed great reluctance to expand Federal constitutional protections, holding instead that this is a matter essentially governed by community standards *(Miller v California,* 413 US 15). *However, New York has a long history and tradition of fostering freedom of expression, often tolerating and supporting works which in other States would be found offensive to the community (People v P. J. Video, supra).* Thus, the minimal national standard established by the Supreme Court for First Amendment rights cannot be considered dispositive in determining the scope of this State's constitutional guarantee of freedom of expression" *(People ex rel. Arcara v Cloud Books,* 68 NY2d 553, 557-558, *supra;* emphasis supplied).

Consequently, the ordinance at issue here must also be analyzed with reference to New York State's more stringent requirement that "when government regulation designed to carry out a legitimate and important State objective would incidentally burden free expression, the government's action cannot be sustained unless the State can prove that it is no broader than needed to achieve its purpose" *(People ex rel. Arcara v Cloud Books, supra,* at 558; *compare, Arcara v Cloud Books,* 478 US 697, 706-707 [in a challenge under the First Amendment of the US Constitution, the " 'least restrictive means' " test is applicable only when the government's action is directly aimed at curtailing "conduct with a significant expressive element" or "has the inevitable effect of singling out those engaged in expressive activity"]).

Furthermore, the Court of Appeals has "recognize[d] that regardless of whether there exists a Federal constitutional provision parallel to a State provision, we must undertake a 'noninterpretive' analysis, proceeding from 'a judicial perception of sound policy, justice and fundamental fairness' " *(People v Alvarez,* 70 NY2d 375, 378, quoting *People v P. J. Video,* 68 NY2d 296, 303, *cert denied* 479 US 1091, *supra).*

■ In our view, the analyses and results in *Renton (supra)* and *Young* (427 US 50, *supra)* are in accord with New York State law and interests. The rationale underlying the test

established by those cases is sound and withstands scrutiny under the New York State Constitution. A comparison of the facts in this case to the aforementioned cases in which the Court of Appeals has applied the New York State Constitution to invoke greater rights to our citizens than under the Federal Constitution reveals that the constraints imposed by the Town of Islip ordinance do not rise to a level so as to be violative of our New York State constitutional standards. The ordinance in question relocates but does not ban adult establishments and, therefore, does not impermissibly "abridge" the liberty of speech (see, NY Constitution, art I, § 8). Nor is there, except as hereinafter shown, a prior restraint upon the appellants' constitutionally protected right to disseminate adult books and other materials. Rather, the ordinance imposes a time, place and manner restriction upon the operation of adult business in a reasonable attempt to preserve the quality of community life. Further, we are satisfied that the *Renton* and *Young* test serves this State's interest in ensuring a balance between the right of an adult bookstore to remain in business and the right of a town to protect its business districts from the spectre of skid-row deterioration.

## IV

We also reject the appellants' contention that the ordinance is unconstitutionally vague and overbroad. A vagueness challenge is determined by the application of a two-part analysis. First, it must be determined whether the ordinance in question is sufficiently definite to provide a person of ordinary intelligence with fair notice that his conduct is forbidden by the ordinance (see, *People v Nelson*, 69 NY2d 302, 307; *People v Smith*, 44 NY2d 613, 618; *People v McGrath*, 135 AD2d 60, 64, *lv denied* 71 NY2d 1030). Second, an ordinance must set forth explicit standards for those who apply them to preclude " ' "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application" ' " *People v Nelson, supra,* at 307, quoting *Grayned v City of Rockford,* 408 US 104, 109). We are further guided by the rule that if the actions of a party are clearly within the ambit of the statute, courts will not strain to imagine hypothetical situations where the application of a statute or ordinance would be unclear *(Young v American Mini Theatres,* 427 US 50, 58-59, *reh denied* 429 US 873, *supra; People v Nelson, supra,* at 308). Based upon these

principles, it is readily apparent that the Town of Islip adult use ordinance is not impermissibly vague.

Similarly, we conclude that the ordinance is not unconstitutionally overbroad (see, *City of Houston v Hill*, 482 US 451, 96 L Ed 2d 398; *Young v American Mini Theatres*, 427 US 50, 60, *supra*). The ordinance relocates, but does not proscribe, constitutionally protected speech or conduct. Furthermore, the ordinance is limited to establishments which exclude minors by reason of age. This limitation reasonably confines the application of the ordinance to those establishments found to have a secondary detrimental effect on the community.

## V

■ We now turn to the validity of the provisions in the ordinance amortizing the legal nonconforming use. In this regard, we agree with the compelling weight of authority that the legal nonconforming use of the respondent bookstore could be amortized in the manner set forth in the town's adult-use ordinance without impairing the bookstore's rights under the Federal or State Constitutions (see, *Matter of Suffolk Outdoor Adv. Co. v Town of Southampton*, 60 NY2d 70, *rearg denied* 61 NY2d 670; *Suffolk Outdoor Adv. Co. v Hulse*, 43 NY2d 483; *Modjeska Sign Studios v Berle*, 43 NY2d 468; *see also*, *SDJ, Inc. v City of Houston*, 636 F Supp 1359, *affd* 837 F2d 1268; *Dumas v City of Dallas*, 648 F Supp 1061, *affd* 837 F2d 1298, *stay granted sub nom. FW/PBS, Inc. v City of Dallas*, — US —, 99 L Ed 2d 919; *Hart Book Stores v Edmisten, Inc.*, 612 F2d 821, *cert denied* 447 US 929; *Purple Onion v Jackson*, 511 F Supp 1207).

The ordinance at issue in *Cook County v Renaissance Arcade & Bookstore* (122 Ill 2d 123, 522 NE2d 73, *supra*) provided for an automatic six-month amortization period with an additional nondiscretionary six months given to any business upon application for a certificate of nonconformance. The ordinance also allowed for a discretionary amortization period longer than one year. These amortization provisions, which provided a shorter permissible nonconforming use than the provision in the ordinance at issue, were upheld by the Supreme Court of Illinois.

In a similar case, the Supreme Court of the State of Washington upheld the constitutionality of an ordinance regulating the location of adult motion picture theaters which provided for a 90-day amortization for preexisting nonconforming uses

*(see, Northend Cinema v City of Seattle,* 90 Wash 2d 709, 585 P2d 1153).

The ordinance at issue here provided for amortization periods varying from approximately 15 months to over 5 years, depending on the amount of capital investment in the business as of the date of the enactment of the ordinance. We therefore conclude that the amortization provision of the subject Town of Islip ordinance is valid.

## VI

Our final concern involves that portion of the ordinance which states that adult uses shall be allowable in an Industrial I district "only as a special exception by the Board of Appeals after public hearing". If this provision would result in an additional obstacle to the relocation of an adult bookstore in an Industrial I district, it would weigh heavily in the resolution of the third element of the *Renton* test. Stated directly, if this requirement for a special exception permit were to be used as a means of barring otherwise complying adult establishments from locations even in an industrial zone, the ordinance would fail to pass constitutional muster.

Unlike a variance, a special exception does not entail a use of property which is forbidden by the zoning ordinance but, instead, constitutes a recognition of a use which the ordinance permits under stated conditions *(see, Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 243), and the "burden of proof on an applicant for a special exception permit is much lighter than that required for a hardship variance" *(Matter of North Shore Steak House v Board of Appeals, supra,* at 244). Applied to this case, the determination that an adult bookstore "is an acceptable use for the land has already been made, legislatively, in the zoning ordinance[s]" *(Matter of Pleasant Val. Home Constr. v Van Wagner,* 41 NY2d 1028, 1029).

However, this ordinance, requiring a special exception permit by the Board of Appeals after a public hearing, "does not deprive the zoning board of discretion to evaluate each application for a special permit" *(Matter of Pleasant Val. Home Constr. v Van Wagner, supra,* at 1029). The ordinance affords the Zoning Board discretion to find that a particular adult establishment does not meet the criteria of the special exception provisions of the zoning ordinance.

■ Given the fundamental constitutional right of free

speech, in our view the provision requiring a special exception permit after a public hearing impermissibly vests town officials with the power to discriminate on the basis of the content of the books or other forms of expression. We come to this conclusion because we find no express provisions in the ordinance setting standards or guidelines for the Zoning Board to follow in deciding whether to grant or deny special exception permits. While there are permissible restrictions set forth in subdivision (C) of the ordinance (i.e., that the establishments shall not be within 500 feet of a residential area or within one-half mile of another adult-use business or within 500 feet of a school, place of religious worship, park, playground or playing field), there is no indication that these will be the only restrictions imposed.

The United States Supreme Court has condemned the vesting of discretionary power in the hands of local officials so as to enable them to grant or deny permits needed to engage in a constitutionally protected activity. In *Shuttlesworth v Birmingham* (394 US 147, 151, *on remand* 45 Ala App 723, 222 So 2d 377), the court struck down an Alabama ordinance requiring anyone desiring to participate in a parade or public demonstration to obtain a permit. The court held that this provision of the ordinance conferred "virtually unbridled and absolute power to prohibit any 'parade' * * * on the city's streets or public ways" *(Shuttlesworth v Birmingham, supra,* at 150). Significantly, the court held that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional" *(Shuttlesworth v Birmingham, supra,* at 150-151).

In this case, while the ordinance meets the *Renton* standards, the Town of Islip cannot impose an additional barrier to the relocation of the bookstore in an Industrial I zone by vesting unfettered discretion in the Zoning Board to grant or deny a special exception permit. This provision gives the Zoning Board the right to impose restrictive conditions on the adult-use businesses on the basis of subjective factors which may serve to disguise content censorship. Therefore, the provision requiring a special exception permit as set forth in the ordinance violates the bookstore's First Amendment rights as well as its corresponding rights under the New York State Constitution.

The remaining question is whether the unconstitutional portion is severable from the valid remainder of the ordi-

nance. That one part of a statute is unconstitutional does not necessarily invalidate the entire act. It is a fundamental rule that an unconstitutional part of a statute may be severed and rejected, while the valid portion may stand. As stated in *People ex rel Alpha Portland Cement Co. v Knapp* (230 NY 48, 60), "[t]he question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether". As early as 1931, Chief Judge Cardozo stated in *People v Mancuso* (255 NY 463, 473) "[t]he whole tendency during recent years, at least in this court, has been to apply the principle of severance with increasing liberality." The rule, stated succinctly, is as follows: "Our duty is to save unless in saving we pervert" *(People ex rel. Alpha Portland Cement Co. v Knapp, supra,* at 63).

The question then is whether the Town Board of the Town of Islip would have opted to have the zoning ordinance enacted relocating adult bookstores to the Industrial I zone with only the restrictions set forth in the ordinance (as to location near church, school, etc.) and without the requirement of obtaining a special exception permit from the Board of Appeals after a public hearing. In reviewing the ordinance to test severability, a court must look at the importance of the statute and the significance of the rejected portion within the over-all statutory scheme *(see, People v Liberta,* 64 NY2d 152, 171, *cert denied* 471 US 1020).

Does the nature of this defect pervade the intent and purpose of the ordinance, or is it a provision capable of being detached from the rest without destroying the substance of the legislation or causing a departure from the main intent of its enactment *(see, Bell v Niewahner,* 54 App Div 530)? In our view, the answer is obvious. The provisions of the ordinance establishing adult uses in the industrial zone satisfy the *Renton* standards. The additional provision requiring a special exception permit is superfluous and does not affect the constitutionality of the remainder of the ordinance, which can stand on its own. Viewing the totality of the circumstances, including the severability clause discussed below, we believe that the Town of Islip, if unable to insist upon a special exception permit, would nevertheless have chosen to relocate the adult-use businesses to the Industrial I district *(see, Cook County v Renaissance Arcade & Bookstore, supra* [special use permit provision contained in an adult use ordinance held to be constitutionally invalid and severed from remaining provi-

sions restricting adult-use businesses to particular zones and establishing minimum distance requirements between adult businesses]).

Moreover, the Town of Islip Code contains a severability clause in the following broad language:

"§ 42.9. Severability

"If any clause, sentence, paragraph, section or part of this ordinance shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in the controversy in which such judgment shall have been rendered."

An express statement by a legislative body that the valid provisions of a statute or ordinance should be enforced, despite a judicial determination that a part is unconstitutional, is generally adhered to by the courts (see, *People ex rel. Stafford v Travis,* 231 NY 339; *Matter of People by Van Schaick [National Sur. Co.],* 239 App Div 490, *affd* 264 NY 473; *Di Paola v Reilly,* 22 AD2d 910; 20 NY Jur 2d, Constitutional Law, § 92).

Therefore, that portion of the opening sentence of section 68-34.1 which conditions the establishment of an adult use business in an Industrial I district "only as a special exception by the Board of Appeals after public hearing" is hereby declared unconstitutional and is severed from the balance of the ordinance, which we uphold.

In sum, we find, as in *Renton* (475 US 41, *supra),* that the Islip ordinance is aimed not at the content of the books sold at the bookstore but rather at the secondary effects of such adult bookstores on the surrounding community. The ordinance comports with the "content-neutral" *Renton* test in that it is designed to serve a substantial governmental interest and, without the special exception permit requirement, allows a reasonable opportunity to open and operate an adult bookstore within the Town of Islip. As such, the zoning ordinance at issue satisfies the constitutional dictates and the doctrine of over-all fundamental fairness mandated by our Court of Appeals.

Accordingly, the order and judgment (one paper) permanently enjoining the respondent from operation as an adult bookstore at its present location should be modified by deleting so much of the judgment as declared the provision of

section 68-341.1 of the Code of the Town of Islip requiring a special exception constitutionally valid and substituting therefor a declaration that the special exception requirement is unconstitutional.

THOMPSON, J. P., SULLIVAN and HARWOOD, JJ., concur.

Ordered that the order and judgment (one paper) is modified, on the law and the facts, by deleting so much of the judgment as declared the provision of section 68-341.1 of the Code of the Town of Islip requiring a special exception, constitutionally valid and substituting therefor a declaration that the special exception requirement is unconstitutional; as so modified, the judgment is affirmed, with costs to the respondent.