OPINION OF THE COURT
Simons, J.
This matter is before us on remand from the United States Supreme Court after it declared unconstitutional portions of the New York Tax Law (Tax Law, § 208 et seq.). The offending portions related to the taxation of domestic international sales corporations (DISCs) and they were invalidated because they authorized credits which favored exports shipped from New York and discriminated against *194 exports shipped from other States (see Westinghouse Elec. Corp. v Tully, 466 US _, 104 S Ct 1856). We are to determine what part of the statute, if any, remains valid. In response to the Supreme Court decision, we hold that clauses (2) and (3) of section 210 (subd 13, par [a]) of the Tax Law are unconstitutional and the remainder valid. The effect of our ruling is to extend the DISC tax credit formerly available only to New York exports to all of the DISC accumulated income attributable to the parent corporation, without regard to the exports’ place of shipment.
The background of this matter is discussed in our previous decision and need not be repeated in full (see Matter of Westinghouse Elec. Corp. v Tully, 55 NY2d 364). It is enough to note that in 1971, as an incentive to increase exports, Congress recognized a business entity it labeled a “domestic international sales corporation” and enacted legislation which granted DISCs certain tax benefits if at least 95% of the DISC’S assets and gross receipts are export-related (see US Code, tit 26, § 992, subd [a]; § 993). Under Federal law DISCs are not taxed on their income (see US Code, tit 26, § 991) but a DISC shareholder, normally a parent corporation, is taxed on 50%[2] of the income, which is called “deemed distributions”, whether that amount is actually distributed or not (US Code, tit 26, § 995).[1] The remaining 50%2 is considered “accumulated income” and taxation of it is deferred until actual distribution to the shareholder or until the DISC no longer qualifies for special tax treatment (US Code, tit 26, § 996).
In 1972, in response to the Federal legislation, New York enacted a comprehensive scheme of taxes and credits for income attributed to a parent corporation from its DISC (see Tax Law, §§ 208-210). Following the Federal lead, New York did not tax DISCs directly but instead elected to tax a parent corporation on its attributable share of the deemed distributions from its DISC (see Tax Law, § 208, subd 9). The State law differed from the Federal law, *195 however, in that it also taxed a parent corporation on its attributable share of its DISC’S accumulated income (see Tax Law, § 208, subd 9, par [i], cl [B]). Although the Legislature decided to tax both DISC accumulated income and deemed distributions to the parent corporation, it provided an offsetting tax benefit in the form of a tax credit that was intended to be comparable to the Federal tax deferral of accumulated income. The credit was calculated by determining the accumulated DISC income attributable to the parent corporation, based upon the percentage of DISC stock it owns, and multiplying that sum by (1) the percentage that the taxpayer’s gross receipts from the sale of export property shipped from a regular place of business in New York bears to the taxpayer’s gross receipts from the sale of export property, (2) the taxpayer’s business allocation percentage (see Tax Law, § 210, subd 3, par [a]), (3) the amount of the credit — 70%, and (4) the franchise tax rate (Tax Law, § 210, subd 13, par [a]). Thus, under the legislative scheme, the larger the percentage of New York exports in relation to out-of-State exports in step 1, the larger the credit against tax.
Petitioner Westinghouse Electric Corporation, a Pennsylvania corporation qualified to do business in New York, was assessed tax deficiencies for the tax years 1972 and 1973 by respondent New York State Tax Commission because it failed to include its “entire net income” (see Tax Law, § 208, subd 9) accumulated income from its wholly owned DISC subsidiary, Westinghouse Electric Export Corporation. It challenged the taxing scheme, alleging that taxing its accumulated DISC income created an undue burden on interstate commerce and violated due process, that the statutory DISC tax credit violated the commerce clause of the Federal Constitution, and that taxing deemed distributions from its DISC also violated due process.
The Appellate Division sustained Westinghouse’s challenge to section 208 (subd 9, par [i], cl [B]), which requires that a DISC’S accumulated income be consolidated with the parent corporation’s entire net income, as an unconstitutional burden on interstate commerce. The court therefore did not address the due process attack on section 208 (subd 9, par [i], cl [B]) nor the constitutionality of the tax credit of *196 section 210 (subd 13, par [a]), but did decide and reject the due process challenge to taxing deemed distributions. In a prior appeal, we modified the Appellate Division decision, rejecting each of Westinghouse’s challenges and upholding the tax and credit scheme in its entirety (see 55 NY2d 364). The United States Supreme Court granted certiorari to review our determination only with respect to the constitutionality of the DISC tax credit. It reversed that determination, holding that “[t]he manner in which New York allows corporations a tax credit on the accumulated income of their subsidiary DISCs discriminates against export shipping from other States, in violation of the Commerce Clause” (Westinghouse Elec. Corp. v Tully, 466 US_, 104 S Ct 1856, 1867-1868, supra).
On remand it remains for this court to determine whether the invalid portion may be severed from the valid and the remainder of the statute preserved. The governing rule was laid down by Judge Cardozo over 60 years ago: “The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots” (People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 60; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd d).
We are to discern, as best we can, what form this legislation would have taken if the Legislature had foreseen the Supreme Court’s decision. The answer requires first an examination of the statute and its legislative history to determine the legislative intent and what the purposes of the new law were, and second, an evaluation of the courses of action available to the court in light of that history to decide which measure would have been enacted if partial invalidity of the statute had been foreseen.
The history of the DISC tax and credit provisions demonstrates that the enacted legislation resulted from a balancing of two equally important objectives, the decision to *197 raise State tax revenues and a determination to provide an incentive to the formation and operation of DISCs in New York. These concerns are demonstrated by correspondence from the State Departments of Commerce and Taxation and Finance and the Division of the Budget, each of whom played an active role in drafting both the Senate and Assembly versions of the legislation. In considering the effect on revenues, the Division of Budget estimated that the State would lose approximately $20-$30 million annually if it failed to tax DISCs at all (see Division of Budget Report in Bill Jacket [at p 20] of L 1972, ch 778). It found this result unacceptable and the legislative history indicates that minimizing this potential revenue loss was an important goal of the legislation (see Letter of Norman F. Gallman, Comr of Taxation and Finance, to Governor Nelson A. Rockefeller in Bill Jacket [at p 8] of L 1972, ch 778; Memorandum of Dept of Commerce in Bill Jacket [at p 12] of L 1972, ch 778). Significantly, although the statute contains no generally applicable severability clause, the Legislature did foresee that taxation of DISC accumulated income might be rendered invalid. Thus, it provided that “in the event this paragraph (requiring DISC stockholders to include their attributable share of DISCs accumulated income in their entire net income) should be rendered invalid, all DISC and their shareholders taxable hereunder shall be taxed instead under the remaining portions of this article” (Tax Law, § 208, subd 9, par [i], cl [B], subcl [3]). In effect this provision requires that DISC shareholders continue to be taxed, consistent with Federal law, on deemed distributions in the event taxation of accumulated income is invalidated and it expresses the intention of the Legislature to salvage some revenues from the taxation of DISCs even if the statute was subsequently impaired.
Pertinent comments by various interested parties manifest that an equally important objective was to “provide a positive incentive for increased business activity in New York State” (Division of Budget Report in Bill Jacket [at p 18] of L 1972, ch 778). The Department of Commerce supported the legislation because it would provide an incentive for the retention and expansion of business in the State and allow the State to “maintain our competitive *198 position in regard to the expansion of manufacturing facilities with neighboring states” (Memorandum of Dept of Commerce in Bill Jacket [at p 11] of L 1972, ch 778). The Assembly Rules Committee stated that the purpose of the bill was “to encourage the formation and operation of Domestic International Sales Corporations (DISCs) in New York” (NY Legis Ann, 1972, p 267).
The means selected to achieve this incentive was the DISC tax credit. As we stated when the case was last before us, the credit was designed by the State to provide a tax incentive comparable to that created by the Federal legislation and “to ensure that New York would not lose its competitive position vis-a-vis other States which were also expected to offer tax benefits to DISC owners” (Westinghouse Elec. Corp. v Tully, 55 NY2d 364, 374, supra). The credit provided an incentive in two ways. First, because it was applied only to DISC accumulated income derived from exports shipped from a place of business in New York, it was expected that it would encourage an increase in the amount of exports shipped from the port of New York (see Memorandum of Dept of Commerce in Bill Jacket [at p 11] of L 1972, ch 778; Division of Budget Report in Bill Jacket [at p 16] of L 1972, ch 778). It was this part of the tax credit that the Supreme Court invalidated. Second, it was expected that the credit would also create an incentive for increased manufacturing of export and export-related goods from New York because it resulted in a lower effective tax rate, whether or not the goods were shipped from within the State, by increasing the parent’s allocation percentage (see Division of Budget Report in Bill Jacket [at p 18] of L 1972, ch 778).
Turning, then, to the second step, evaluating the options available in light of this history, the parties suggest three alternatives. Petitioner contends that we should invalidate the entire legislative scheme for taxing DISC accumulated income and deemed distributions along with the tax credit for accumulated income because the tax and credit provisions are inextricably interwoven. This would fail to accomplish the legislative purpose of minimizing an estimated loss of approximately $30 million annually, however, a result which the Legislature found unacceptable *199 and a result which runs counter to the general rule that “[u]nless the conclusion be unavoidable, ‘a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid’ ” (People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 62, supra, quoting Field v Clark, 143 US 649, 697). Any other rule could be financially disastrous. In addition, it should be noted that we would not go so far as to invalidate the tax on deemed distributions from DISCs, which is implicit in Westinghouse’s argument, because it would be contrary to the express statutory intent contained in the severability clause. The tax credit that was found partially unconstitutional applied only to DISC accumulated income (see Tax Law, § 210, subd 13, par [a]) and thus was never related to the taxation of deemed distributions. The Legislature, however, specifically provided that deemed distributions would continue to be taxed if taxation of accumulated income was held invalid (see Tax Law, § 208, subd 9, par [i], cl [B], subd [3]). At most, the invalidity of the tax credit could eliminate the tax on accumulated income but it could not be used to reach the tax on deemed distributions.
Conversely, the Tax Commission would have us strike down the whole tax credit for accumulated income, and tax shareholders of DISCs at the full franchise tax rate — 9%.
That remedy affords the greatest protection to the State treasury and furthers the legislative purpose of raising revenues, but it does so by undermining the equally important purpose of encouraging business activity in the State. That was the reason that the Legislature enacted the credit in the first place. Nothing in the legislative history indicates that the Legislature would have enacted a law without any credit provision and several officials expressly opposed full taxation of DISC income either directly or to the shareholders because to do so would encourage DISC formation outside the State and would discourage the manufacturing of export goods in New York (see Letter of Norman F. Gallman, Comr of Taxation and Finance to Governor Nelson A. Rockefeller in Bill Jacket [at p 8] of L 1972, ch 778; Division of Budget Report in Bill Jacket [at p 18] of L 1972, ch 778).
*200 Finally, petitioner suggests, and we adopt, a third alternative, that only that portion of the tax credit that discriminates against exports shipped from outside of New York be invalidated, thus effectively extending the credit to all of a shareholder’s accumulated DISC income that has a constitutional nexus to New York. This is the only alternative of the three available that substantially furthers the dual legislative purposes of the law. The effect is to extend the DISC tax credit to all the DISC accumulated income allocated to New York under the parent corporation’s business allocation percentage. The statute, as so interpreted, promotes the Legislature’s intent to provide a strong incentive for the continuation and expansion of export-related business in New York by lowering the effective tax rate of any business that owns a DISC and it also advances the Legislature’s purpose of minimizing losses because even with an extension of the credit the law will continue to produce substantial tax revenues. Indeed, the Tax Commission concedes that a decision to extend the tax credit to all DISC accumulated income allocated to New York will still produce approximately $24 million annually in increased revenues while total elimination of the credit would produce only slightly more, approximately $30 million.
Accordingly, on reargument following remand by the Supreme Court of the United States, judgment modified by declaring that clauses (2) and (3) of section 210 (subd 13, par [a]) of the Tax Law are unconstitutional, with costs to petitioner, and matter remitted to the Tax Commission for recomputation of the tax in accordance with this opinion and, as so modified, affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
On reargument following remand by the Supreme Court of the United States, judgment modified, with costs to petitioner, and matter remitted to Supreme Court, Albany County, with directions to remand to the Tax Commission for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

; If more than 50% is actually distributed then a shareholder is taxed on the actual amount rather than the 50% “deemed distributed”.

. For the tax years in question in this case, 1972-1973,50% of the DISC income was deemed distributions and the rest was accumulated income. By 1983 Congress had increased the percentage deemed distributed to 57.5% (see Westinghouse Elec. Corp. v Tully, 466 US _, 104 S Ct 1856, 1859, n 3).