ASSOCIATION OF SURROGATES AND SUPREME COURT REPORTERS WITHIN the CITY OF NEW YORK, Mary O'Leary, President; Citywide Association of Law Assistants, Barbara Brown, President; Court Attorneys Association of the City of New York, Robert A. Mulhall, President; Court Officers Benevolent Association of Nassau Co., Jeffrey Pollack, President; District Council 37, American Federation of State, County and Municipal Employees & Local 1070, Paul Shelkin, President; Local 704, Service Employees International Union, John Walsh, President; New York State Supreme Court Officers Association, ILA, Local 2013, AFL–CIO, John McKillop, President; Ninth Judicial District Court Employees Association, Martin Sharp, President; Suffolk Co. Court Employees Association, Inc., Thomas F. McGuinness, President; the Communication Workers of America, AFL–CIO, Local 1180, Arthur Cheliotes, President; Civil Service Forum, Local 300, SEIU, Salvatore Cangiarella, President; Janet Foster, Susan Glasbrenner, Michael Sullivan, David Richman, Greg Snigor, James DiNapoli, William Rosario, Abel Peltro, George F. Berghorn, Lisa Rosenzweig and Michael Smith, Plaintiffs,

v.

STATE OF NEW YORK; Edward V. Regan, as Comptroller of the State of New York; Robert Abrams, as Attorney General of the State of New York; Matthew T. Crosson, as Chief Administrator of the Unified Court System and the State of New York Unified Court System, Defendants.

No. 90 Civ. 6522 (RPP).

United States District Court, S.D. New York.

Dec. 4, 1991.

Schlachter & Mauro by David Schlachter, Commack, N.Y., for plaintiffs.

Michael Colodner by Michael Colodner, Kenneth Falk, New York City, for defendant Matthew T. Crosson.

Robert Abrams, Atty. Gen. of N.Y., Dept. of Law by Andrea Green, New York City, for State of N.Y., Robert Abrams, and Edward V. Regan.

OPINION

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Crosson moves for an order clarifying the Order and Judgment, 772

F.Supp. 1412, of this Court dated August 29, 1991 implementing the mandate of the Court of Appeals for the Second Circuit, which instructed this Court to:

(1) enter a declaratory judgment declaring that New York's lag-payroll law violates the contract clause of the United States Constitution; (2) enjoin the continuing effects and application of the lag-payroll law; and (3) enter an appropriate judgment for the plaintiffs which shall include restitution of the lagged wages for all affected employees. Whether or not interest shall be awarded on the restored wages will lie in the equitable discretion of the district court.

*Association of Surrogates & Supreme Court Reporters v. State of New York*, 940 F.2d 766, 775 (2d Cir.1991). Defendant Crosson contends that the Judgment enjoins application of the lag payroll statute to unrepresented and represented employees alike.[1] Defendants State of New York, Edward Regan, and Robert Abrams (the "State Defendants") counter that only represented employees are covered by the Judgment. For the reasons stated below, this Court grants Defendant Crosson's motion and clarifies its Order and Judgment to require implementation for both unrepresented and represented employees.

## BACKGROUND

The facts of this case are set forth fully in this Court's previous opinion dated September 3, 1991, which followed its August 29, 1991 Judgment; familiarity with that opinion is presumed. Following the entry of Judgment in this case in accordance with the instruction of the Second Circuit, the Comptroller of the State of New York transferred into a special account money sufficient to reimburse all employees for lag payroll deductions with interest. Back salary owed to all represented employees was then paid. Upon submission of vouchers by the Office of Court Administration, interest to these same employees also will be paid. Sufficient money has been transferred to the special account to cover pay-

ment of withheld salary plus interest to unrepresented employees, but restitution to those employees hinges upon the Court's opinion herein. State Def.Mem. in Opp. at 5.

## DISCUSSION

### 1. The Mandate from the Second Circuit

According to the State Defendants, the Second Circuit's finding that the lag payroll statute is unconstitutional applies only to represented employees who were parties to a collective bargaining agreement with the State of New York. This Court agrees. The clear thrust of the Court of Appeals's opinion is that the lag payroll law violates the contract clause of the United States Constitution because it constitutes a substantial, unnecessary, and unreasonable impairment by the State of its contractual obligations to the represented employees. *See* 940 F.2d at 772–73.

Defendant Crosson contends that the "plain language" of the mandate, however, requires that restitution be made to all affected employees "regardless of their representation status." Def. Crosson's Reply Mem. in Supp. at 3; Def. Crosson's Mem. in Supp. at 6–7. This Court disagrees that the language is that clear, but instead finds ambiguity in the Court of Appeals' requirement that the judgment include "restitution of the lagged wages for all affected employees" in its mandate to this Court. 940 F.2d at 775. On its face and when read in conjunction with the rest of the instruction that the "appropriate judgment for the plaintiffs" shall include such relief, the phrase "all affected employees" does appear to refer to all employees, represented or unrepresented, from whom pay was withheld under the lag payroll statute. In addition, the district court was instructed to "enjoin the continuing *effects and application* of the lag-payroll law." *Id.* at 775 (emphasis added).

The body of the Second Circuit's opinion, however, is inconsistent with Defendant

---

1. "Represented employees" refers to nonjudicial employees of the Unified Court System represented by plaintiffs herein and covered by collective bargaining agreements. "Unrepresented employees" refers to nonjudicial employees not covered by such contracts.

Crosson's interpretation. The opinion reveals references to "the affected employees" in the context of discussions of the collective bargaining agreements. *See, e.g., id.* at 773 ("the State of New York promised the *affected employees, inter alia,* that they would be paid bi-weekly" (emphasis added)). The court's repeated reference to the statute as a "contractual impairment" is a further indication that the court was focusing exclusively on represented employees. Moreover, the court interchangeably refers to "plaintiffs" and "affected employees." *See, e.g., id.* at 770, 774. But all Plaintiffs are either individual employees covered by collective bargaining agreements or are labor organizations recognized or certified to represent non-judicial employees of the New York Unified Court System. *See id.* at 770; State Def. Mem. in Opp. at 6.

This Court will not base its decision on the intention of the Court of Appeals, however, because even if the mandate applies only to represented employees, this Court must strike the entire statute since it finds that it is not severable.

2. Severability

The severability of the lag payroll statute is governed by New York law. *See National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 148 (2d Cir.1991); *General Elec. Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1460 (2d Cir.1991). The New York test for severability is "whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether." *People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 129 N.E. 202, 207 (1920), *cert. denied,* 256 U.S. 702, 41 S.Ct. 624, 65 L.Ed. 1179 (1921); *see also People v. Liberta,* 64 N.Y.2d 152, 485 N.Y.S.2d 207, 218, 474 N.E.2d 567, 578 (1984), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2029, 85 L.Ed.2d 310 (1985); *Westinghouse Elec. Corp. v. Tully,* 63 N.Y.2d 191, 481 N.Y.S.2d 55, 57, 470 N.E.2d 853, 855 (1984); *People v. Mancuso,* 255 N.Y. 463, 175 N.E. 177, 180 (1931). When deciding whether to sever, a court should first examine the legislative history to determine legislative intent, and then should evaluate the courses of action available to the court in light of that history. *Westinghouse,* 481 N.Y.S.2d at 57, 470 N.E.2d at 855. While New York courts generally prefer to sever, if possible, *see Alpha Portland Cement,* 129 N.E. at 208 ("Our duty is to save, unless in saving we pervert."), there appears to be no formal presumption under New York law that "the legislature would prefer the portion remaining after partial invalidation to continue in effect." *Doyle v. Suffolk County,* 786 F.2d 523, 528 (2d Cir.) (citing U.S. Supreme Court cases construing federal law), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986).

In cases in which the question of severance has arisen, the most common course of action has been to sever the statute at issue. A number of factors have persuaded courts that severance most closely approximated the original legislative intent. For example, courts have preserved the valid portions of the following types of statutes: a statute containing a severability clause, *Town of Islip v. Caviglia,* 141 A.D.2d 148, 532 N.Y.S.2d 783, 795 (1988) (zoning ordinance); a general revenue statute, invalidation of which could be "financially disastrous," *Westinghouse,* 481 N.Y.S.2d at 58–59, 470 N.E.2d at 857 (DISC tax credit provisions of New York Tax Law) (citing *Alpha Portland Cement,* 129 N.E. 202); a statute in which the invalid provision was peripheral or superfluous, *Town of Islip,* 532 N.Y.S.2d at 795; a statute previously enacted and enforced without the offending provision, *General Elec.,* 936 F.2d at 1461 (New York's prevailing wage law); and criminal statutes of "utmost importance," *Liberta,* 485 N.Y.S.2d at 218–19, 474 N.E.2d at 578–79 (severing rape and sodomy statutes "in light of catastrophic effect" of striking down entire statutes).

Courts that have refused to sever a statute typically have found that "the balance of the legislation is incapable of functioning independently [because] the valid and invalid provisions are so intertwined." *See, e.g., National Advertising,* 942 F.2d at

148; *New York State Superfund Coalition v. New York State Department of Envtl. Conservation*, 75 N.Y.2d 88, 550 N.Y.S.2d 879, 881, 550 N.E.2d 155, 157 (1989). In sum, in a typical case the court either invalidates only a peripheral provision and preserves the core, or invalidates both because one cannot logically be separated from the other.

Here, however, the Court is presented with what appears to be a novel situation: the State Defendants would have the Court in effect invalidate the dog, while preserving the tail. The lag payroll law as enacted was intended to generate a savings of $7 million.[2] *See Association of Surrogates*, 940 F.2d at 769. In fact, a total savings of $9.7 million was realized. Rewritten to exclude application to represented employees, the lag payroll law would produce savings of only $980,000, or ninety percent less than as enacted; the unrepresented employees constitute only seven percent of those affected.[3] Def. Crosson's Mem. in Supp. at 11.

Revision concededly is not impossible: while the statute makes no differentiation between represented and unrepresented employees, Def. Crosson's Mem. in Supp. at 10, its terms could easily be amended to apply to unrepresented employees alone. As Judge Cardozo stated, "Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment. The principle of division is not a principle of form. It is a principle of function." *Alpha Portland Cement*, 129 N.E. at 207 (citation omitted). Furthermore, the intent of the legislature in enacting the lag payroll law would in a general way be preserved by severance, since the State would thereby save at least some revenues.

At the same time, it is significant that in the numerous cases in which statutes were severed, the valid portion of the statute preserved by the court comprised the core or essence of the legislation. Indeed, in *Alpha Portland Cement* Judge Cardozo distinguished the tax scheme before him, where the "erroneously included" item could be "eliminated from the income with little disarrangement of the average results," from a federal income tax case in which "to eliminate the items unlawfully included would mean the loss of 'by far the largest part of the anticipated revenue.'" *Id.* at 206–07 (quoting *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601, 636–37, 15 S.Ct. 912, 920, 39 L.Ed. 1108 (1895)).

The latter situation precisely describes that before this Court. The invalid portion of the lag payroll law is clearly not merely peripheral. While excision might not "pervert" the intention of the legislature, this is not a case where "all the world can see what sensible legislators in such a contingency would wish that we should do." *Id.* at 208. Moreover, the other factors that normally persuade a court to sever a statute are absent here. The lag payroll law contains no severability clause; indeed, its application to both represented and unrepresented employees without differentiation indicates that the issue of severability was not even contemplated. The New York Legislature has enacted lag payroll statutes on two other occasions, and neither of those statutes applied only to unrepresented employees. Def. Crosson's Reply Mem. in Supp. at 7. Refusal to sever the statute will not have a "disastrous" financial effect, since the Second Circuit ruling already requires excision of at least 93% of the employees originally covered. Finally, while the easing of New York's fiscal crisis is clearly an important goal, there is nothing about this particular means to that end that mandates its preservation.

In *Alpha Portland Cement*, Judge Cardozo advised that in considering whether to

---

**2.** Other than this statement of purpose, there is no legislative history to which this Court has been referred or that it has been able to find to assist in rendering a decision.

**3.** In this Court's judgment, the legislature would not have imposed a lag payroll law that did not apply evenly across the board to all nonjudicial employees of the Unified Court System, but instead affected only seven percent of its employees adversely. Despite the State's fiscal need, the Court concludes that fairness to the minority of nonjudicial employees would predominate in these circumstances.

sever a statute "[t]he answer must be reached pragmatically, ... by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots." 129 N.E. at 207. In this case, however, to sever New York's lag payroll statute as proposed by the State Defendants would be to lay the knife to the roots and to leave only a branch. This Court is persuaded that the legislature would not have enacted the lag payroll law had it foreseen such a consequence.

### CONCLUSION

For the foregoing reasons, Defendant Crosson's motion is granted, and this Court's Order and Judgment of August 29, 1991 is clarified to require implementation for unrepresented as well as represented employees.

IT IS SO ORDERED.