OPINION OF THE COURT
 

 Simons, J.
 

 This appeal involves the State’s attempt, by legislative amendments to the State Finance Law, to offset anticipated State budget shortfalls for the fiscal year 1991-1992 by effecting a five-day lag payroll upon both represented and unrepresented nonjudicial employees of the Unified Court System (State Finance Law § 200 [2-b]).
 
 [1]
 
 The savings are to be realized by paying employees for nine days, rather than 10, in each
 
 *44
 
 biweekly salary check over five payroll periods. The wages deferred are to be paid in lump sums when the employees’ service is terminated, either by retirement or death, at the basic annual salary in effect at that time. The value of the deferred payroll is allegedly $10.7 million, with $1.1 million of that amount attributable to unrepresented employees not protected by any collective bargaining agreement.
 

 A prior statute imposing a lag payroll upon similarly situated employees for the fiscal year 1990-1991, has been declared void by the Federal Court of Appeals as violating the Contract Clause of the United States Constitution (US Const, art I, § 10, cl [1];
 
 see, Association of Surrogates & Supreme Ct. Reporters Within City of N. Y. v State of New York,
 
 940 F2d 766
 
 [Association of Surrogates I]; see also, Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v State of New York,
 
 78 NY2d 143 [answering certified question]). Indeed, in the only other cases cited to us in which lag payroll legislation was considered, the courts have deemed it invalid
 
 (see, Matter of Quirk v Regan,
 
 148 Misc 2d 300;
 
 Matter of McDermott v Unified Ct. Sys.,
 
 Sup Ct, Albany County, June 21, 1991).
 

 The courts below granted plaintiffs summary judgment, declared the statute unconstitutional and permanently enjoined its enforcement. The matter is before us on expedited appeal by leave of the Appellate Division.
 

 The threshold issue is whether a valid and subsisting contract existed between the parties. Defendants maintain that the State could postpone the employees’ pay because the contracts with the respective plaintiff unions had expired on March 31, 1991, before the statute was enacted. In response to plaintiffs’ contention that the contract remained in effect because of the continuing benefits provision of Civil Service Law § 209-a (1) (e), defendants assert that the provision conferred no more than statutory rights to the employees which were subject to repeal by the later enactment.
 
 [2]
 
 The courts
 
 *45
 
 below concluded that although the stated term of the contracts had been completed, the contracts continued thereafter pursuant to Civil Service Law § 209-a (1) (e). We agree.
 

 When the contracts were negotiated, the existing statutes, specifically the continuation-of-benefits clause, were incorporated into them and continued as part of the agreement until new agreements were executed. It was unnecessary, therefore, that a similar clause be included in the agreement because the obligation of the contracts included "not only the express terms but also the contemporaneous state law pertaining to [their] interpretation and enforcement”
 
 (United States Trust Co. v New Jersey,
 
 431 US 1, 19-20, n 17;
 
 see also, Association of Surrogates I,
 
 940 F2d 766, 774,
 
 supra).
 

 The question then is whether the Legislature,
 
 in passing section 209-a (1) (e), intended "to create private rights of a contractual nature enforceable against the
 
 State”
 
 (United States Trust Co. v New Jersey, supra,
 
 at 17, n 14 [emphasis supplied]). Significantly, the section provides, not that the terms and conditions of employment shall continue, but that the terms of the "expired agreement” shall continue. We conclude that the provision extended the contract, thereby affording plaintiffs protection under the Contract Clause of the Federal Constitution
 
 (cf., Indiana ex rel. Anderson v Brand,
 
 303 US 95). To hold otherwise would mean that the State would be bound by the terms of an expired collective bargaining agreement only so long as it wished to be bound.
 

 Our construction of section 209-a (1) (e) is consistent with the underlying purposes of the Taylor Law (Civil Service Law art 14), to promote employer-employee harmony and uninterrupted service in the public sector by avoiding destructive self-help remedies
 
 (see, Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v State of New York,
 
 78 NY2d 143, 153,
 
 supra
 
 [citing Civil Service Law § 200]). Thus, the statute denies employees the right to strike, balances that loss with a continuation of benefits provision binding on the employer after the existing contract expires, and mandates that the parties bargain in good faith to achieve a new agreement.
 

 Nor do we accept defendants’ contention that the Legislature repealed section 209-a by enacting the deferred payroll statute. Section 200 (2-b) contains no express repeal, its terms do not conflict with those of section 209-a (1) (e) and it contains no other language from which an intent to repeal may be inferred
 
 (see generally, Alweis v Evans,
 
 69 NY2d 199).
 
 *46
 
 Indeed, defendants’ cause would not be advanced were we to hold that the section was intended to repeal section 209-a (1) (e); the repealer would still impair the employees’ contract rights. Having concluded that the contracts continued after the expiration of their stated term, we turn to the question of whether section 200 (2-b) of the State Finance Law violates the Federal Constitution.
 

 The Contract Clause of the United States Constitution prohibits a State from passing any law impairing the obligation of contracts (US Const, art I, § 10, cl [1]). Notwithstanding its categorical language, not all impairments of contract are unconstitutional (see,
 
 United States Trust Co. v New Jersey,
 
 431 US 1, 21,
 
 supra).
 
 The "more difficult question”, the Supreme Court has stated, is whether the impairment is permitted under the Constitution
 
 (United States Trust Co. v New Jersey, supra,
 
 at 21). The answer is found by balancing the contract rights of the individual against "the 'essential attributes of sovereign power’ * * * necessarily reserved by the States to safeguard the welfare of their citizens”
 
 (United States Trust Co. v New Jersey, supra,
 
 at 21 [quoting from
 
 Home Bldg. & Loan Assn. v Blaisdell,
 
 290 US 398, 435]). The court, having found an impairment, must test it to determine if it is substantial, rather than theoretical
 
 (see, Allied Structural Steel Co. v Spannaus,
 
 438 US 234, 244;
 
 Association of Surrogates I,
 
 940 F2d 766, 771,
 
 supra; see also, Davis v Mills,
 
 194 US 451, 456). If the impairment is substantial, it must be examined in light of the nature and purpose of the State legislation, and will be upheld if it is reasonable and necessary to accomplish a legitimate public purpose. In the case of private contracts, courts generally defer to legislative judgment as to necessity and reasonableness
 
 (United States Trust Co. v New Jersey, supra,
 
 at 22-23). However, when the State impairs its own contracts, a more searching analysis is required because of the self-serving nature of the legislation
 
 (United States Trust Co. v New Jersey, supra,
 
 at 25-26;
 
 see generally,
 
 2 Rotunda, Nowak and Young, Constitutional Law: Substance and Procedure § 15.8, at 103-104).
 

 The impairment of contract created by the lag payroll is substantial and the statute, like the prior statute deferring pay for fiscal year 1990-1991, is not sustainable as reasonable and necessary to achieve an important public purpose
 
 (see, Association of Surrogates I,
 
 940 F2d 766, 772-774,
 
 supra).
 
 The burden it imposes is essentially the same as that in
 
 Association of Surrogates I (supra).
 
 It results in withholding 10% of
 
 *47
 
 an employee’s expected wages each week over a period of 10 weeks: salary which will not be paid until the employee leaves State service, which may be years in the future. That is not an insubstantial impairment to one confronted with monthly debt payments and daily expenses for food and the other necessities of life.
 

 Nor is lagging reasonable and necessary to accomplish the State’s purposes. The choice of which revenue-raising or revenue-saving devices should be used is for others, not the courts, but the menu of alternatives does not include impairing contract rights to obtain forced loans to the State from its employees. In
 
 Association of Surrogates I (supra),
 
 the Federal court found it significant that the lag funds were intended to fund various court initiatives. At the very least, it held, the State could eliminate those programs rather than impair the employees’ contracts. This aspect distinguishes
 
 Surrogates I
 
 from this case, but we do not find the distinction dispositive. Elimination of the initiatives was one of several available options. Although that precise alternative is not available here, others are.
 

 The
 
 Subway-Surface
 
 case does not require a different result
 
 (Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.,
 
 44 NY2d 101). The Court in that case dealt with State legislation enacted to meet a declared financial emergency in New York City. The statute was challenged because it eliminated a prospective salary increase. Unlike this case where earned salaries may be deferred for indefinite periods of perhaps 25, 30 or 40 years, until the employee leaves State service, the Financial Emergency Act considered in
 
 Subway-Surface
 
 was a temporary measure, adopted after formal findings of necessity, to avoid the perceived emergency created by New York City’s imminent bankruptcy. It postponed a future benefit to employees for one year only or until the emergency was declared over
 
 (cf., Home Bldg. & Loan Assn. v Blaisdell,
 
 290 US 398,
 
 supra).
 

 Finally, the State contends that if section 200 (2-b) of the State Finance Law unconstitutionally impairs the contracts of the represented employees it should nevertheless be applied to lag the pay of the unrepresented employees. The standard for determining severability was stated in
 
 People ex rel. Alpha Portland Cement Co. v Knapp
 
 (230 NY 48, 60 [Cardozo, J.]):
 

 "The question is in every case whether the legislature, if partial invalidity had been foreseen, would
 
 *48
 
 have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.”
 

 (See also, Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation,
 
 75 NY2d 88, 94;
 
 Matter of Westinghouse Elec. Corp. v Tully,
 
 63 NY2d 191, 196.)
 

 In a general way, severance could preserve the purpose of the payroll lag statute because at least some savings might be realized by continuing the lag against unrepresented employees. However, only 10% of the employees intended to be affected by the statute would remain subject to the lag. There is little reason to believe the Legislature would conclude that this burden should be imposed on only a small segment of the employees of the Unified Court System where the intended effect of the statute has been so severely undercut. The effect would be to "invalidate the dog, while preserving the tail”
 
 (see, Association of Surrogates I,
 
 778 F Supp 210, 213). Significantly, section 200 (2-b) contains no severability clause and it does not differentiate between represented and unrepresented employees. Moreover, the Legislature has enacted lag payrolls on two prior occasions in the recent past and in neither of them did it apply the legislation to only a limited segment of the employee pool, or provide for severability if the statute was invalid as to some of those affected
 
 (see,
 
 L 1982, ch 353, § 5; L 1990, ch 190, § 375). It is not reasonable to believe it would choose to do so now.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . State Finance Law § 200 (2-b) provides:
 

 "2-b. (a) For nonjudicial officers and employees of the unified court system: commencing with the earliest administratively feasible payroll period (and corresponding payment date) subsequent to the date this subdivision becomes a law, payment on the payment date of the five payroll periods commencing thereon shall be for nine-tenths of that amount paid each payroll period until a total of five-tenths of salary for one payroll period that would be paid but for this provision has been withheld. For nonjudicial officers and employees hired after the date this subdivision becomes a law, the withholding of five days of salary shall be accomplished in the same manner described above, provided, however, such withholding shall be made on the first five payment dates in which such new officers or employees would otherwise have received their salary.”
 

 
 *44
 
 "(b) Where salary has been withheld pursuant to this subdivision, in lieu of such salary, an officer or employee who retires or otherwise separates from service, or the beneficiary of an employee who dies, shall be entitled to a lump sum payment equal to the salary so withheld at the rate of basic annual salary in effect at the time of death, retirement, or other separation from service for each day or part thereof for which salary was withheld pursuant to this section.”
 

 [2]
 

 . Civil Service Law § 209-a (1) (e) provides that it is an improper employer practice: "to refuse to continue all the terms of an expired agreement until a new agreement is negotiated”.