Simons, J.
(dissenting in part). I would hold, as did Supreme Court and a unanimous Appellate Division, that the City may require applicants, as a precondition for employment or promotion, to either pay their unchallenged debts to it in full or, if the applicants cannot afford to pay in full, to authorize payment from their wages over a period of time following employment or promotion. The dispositive question is whether such a requirement is a legitimate qualification for employment because it measures character and, therefore, is not subject to mandatory bargaining, or is a term and condition of employment and is subject to bargaining. In my view, the requirement is an appropriate and objective measure of character and the respondent Board’s contrary determination in this case is unreasonable. I, therefore, dissent from the Court’s decision insofar as it reinstates the Board’s determination that the repayment agreement is subject to mandatory bargaining.
In 1986 the City of New York realized that delinquent debtors and scofflaws owed it substantial sums of money. The problem was aggravated by the fact that the City’s own employees owed large amounts for such things as traffic fines, real property taxes and overpaid social services benefits.[1] In an effort to recover these delinquencies, the City adopted a policy requiring all applicants for employment or promotion to complete a questionnaire supplying information which would facilitate it in discovering whether the applicant owed it money. Along with general information of present and past residences, vehicle registration and such, the applicant also was required to list all debts owed the City and to indicate whether liability was contested. The applicant was not eligible *133 for employment or promotion until he or she agreed to pay the uncontested debts in full. If economic hardship was established, the applicant could agree to pay the debt over time through a wage deduction. Three unions representing municipal employees challenged the policy claiming that it affected a term and condition of employment and was subject to mandatory bargaining. Respondent Board agreed and ordered the City to cease and desist using the questionnaire (except as to new employees) and the repayment agreement.
Analysis starts by recognizing that the Board determines in the first instance whether a particular subject matter is bargainable. Its determination is entitled to deference from the courts and should be vacated only if it is arbitrary, capricious and unreasonable as a matter of law (see, Matter of Incorporated Vil. of Lynbrook v New York State Pub. Employment Relations Bd., 48 NY2d 398, 404; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50-51; Nassau Ch., Civ. Serv. Employees Assn. v Helsby, 54 AD2d 925, affd 43 NY2d 755). For the reasons that follow, I conclude that the Board’s determination was unreasonable as a matter of law. Accordingly, I would affirm the order of the Appellate Division.
To start with points of agreement, the majority holds, and I agree, that the questionnaire was a proper exercise of the City’s powers, for both prospective employees and those seeking promotion. Although the majority and the Board would invalidate the repayment agreement at issue in this case, they agree that the City has a substantial and paramount public interest in the prompt and efficient collection of debts owed to it. They also agree that the City has the power to set policies to determine employee qualifications; that character and reputation, when measured by some objective standard,[2] may be a legitimate qualification of employment; and that an "appropriately framed policy” regarding disclosure and repayment of indebtedness may be a proper measure of one’s character and reputation (see, majority opn, at 128; Administrative Code of City of New York § 12-307 [b] ["(i)t is the right of the city, or any other public employer, acting through its agencies, to determine * * * the standards of selection for employment”]).
*134 Our disagreement centers on whether the repayment agreement in this case was intended as a character qualification or was, as the Board found, merely adopted as a pretext to raise revenues. The unions contended that the policy was a subterfuge — an expedient way to collect debts from employees protected by civil service without the delay and expense of legal proceedings to enforce the debts. The City conceded that one of the purposes of the policy was to raise money expeditiously, but contended that the policy, which induced applicants to acknowledge and pay their just debts, was also an appropriate measure of character because it reflected maturity, a sense of responsibility and loyalty to their employer. When related to public employment, the policy gauged an applicant’s understanding that those who have an opportunity to work for the public and enforce the law have a duty to obey the law. Moreover, the City noted that the requirement of proving character is not new; established procedures governing municipal employment routinely require candidates to prove good character.
The Board did not find these arguments persuasive. It noted that the public statements by the Mayor at the time the policy was instituted referred to revenue raising and it found additional evidence that this was the overriding purpose of the policy in the fact that it did not take into consideration the size, nature or duration of the applicant’s debt in determining the good character of the individual.
I fail to see how those considerations support the Board’s finding that the policy was intended merely to raise revenue. The City’s policy was to disqualify from hiring and promotion not just applicants who refused to pay debts of a certain type, but rather any who refused to pay debts owed to it, no matter how much was due or how long the debt had been delinquent. It was not the amount of revenue that could be collected by the City that was decisive, it was the refusal to pay money justly owed to the City that reflected adversely upon the applicant’s character. The use of the repayment agreement to evaluate character is implicit in it and is valid irrespective of whether the Koch memorandum or the policy itself mentioned the word "character.” Indeed, had the policy been designed solely as a revenue-raising measure, the City undoubtedly would have attempted to impose a repayment obligation on all employees, not merely applicants for employment and promotion. Accordingly, I conclude that the City’s policy serves as a *135 legitimate measure of character and reputation well within the City’s managerial power to "determine the standards of selection for employment” (Administrative Code § 12-307 [b]). Considering the basis for the Board’s decision, I find its determination to the contrary irrational.[3]
However, this does not end the inquiry. As noted by the majority, "[although these [managerial] decisions are excluded from bargaining, their practical impact on employees may be bargainable” (majority opn, at 127; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 51-52, supra). Here, the Board concluded that the City’s policy affected mandatory subjects of bargaining because the payroll deductions and threat of disciplinary action contained in the repayment agreement were "terms and conditions” of employment. While this determination is entitled to deference so long as it is not affected by an error of law, arbitrary and capricious or an abuse of discretion, the Board had no reasonable basis for finding that the City’s policy affected a mandatory subject of bargaining under the facts of this case.
The repayment agreement provides that applicants who have not paid their public debts may either pay by "lump sum” or, if they can demonstrate hardship, by deductions from their paycheck "not to exceed 10%” of their net income. The Board concluded that these payroll deductions affect wages and were therefore a matter within the scope of collective bargaining. Contrary to the Board’s conclusion, however, the mere fact that an applicant could authorize a payroll deduction does not convert an otherwise valid condition of employment into a mandatory subject of collective bargaining. The applicants are lawfully obligated to pay these debts and the agreement provides two avenues for doing so — payment in a lump sum or extended periodic payments through payroll *136 deductions.[4] To be sure the deductions affect wages, just as voluntary deductions to repay an employee credit union loan do, but the deductions do not thereby automatically become a matter subject to mandatory bargaining. The City could, if it wished, insist that payment be made in full and that the applicant borrow the funds at interest from a bank or third party to do so. In that way, it would avoid the Board’s conclusion that the payroll deductions provision was a "term and condition” of employment but the applicant would be severely disadvantaged. The majority concedes that the City could frame a policy requiring repayment of indebtedness to it by lump sum, and that such a policy could constitute a legitimate test of character. If that is so, then it is difficult to see why it is not a legitimate test of character to allow the employee to pay off the debt over time. To accept the finding of the Board, that the agreement to repay City debts is a "term and condition of employment” because of the optional provision allowing payments by wage deductions, deprives the employee of an ameliorative feature of the policy and requires the City to negotiate with union representatives over whether and how an applicant seeking employment or promotion with the City will pay a legally owed debt.
This case is vastly different from Association of Surrogates & Supreme Ct. Reporters v State of New York (79 NY2d 39) relied on by the majority. Association of Surrogates did not involve a labor law dispute over "terms or conditions” of employment. Rather, it was an action seeking a declaratory judgment that a section of the State Finance Law was unconstitutional. In dispute was a statute enacted by the State Legislature to eliminate a budgetary shortfall which attempted to lag or defer judicial employees’ pay against their wishes. The State was, in effect, compelling its employees to loan it money for State purposes. Here, the employees may authorize the City to periodically withhold a portion of their pay, not to eliminate the City’s budgetary shortfall, but to satisfy a legal obligation to the City. The City has merely recognized a procedure which permits employees to use a wage deduction to satisfy their personal needs (cf., Nassau Ch., Civ. Serv. Employees Assn. v Helsby, 54 AD2d 925, affd 43 *137 NY2d 755, supra). Inasmuch as there is no rational basis for the distinction between lump-sum payment and an employee election to use extended periodic payments, I would reverse the Board’s finding regarding payroll deductions.
Nor does the agreement violate the Collective Bargaining Law because nonpayment is, under its terms, a potential basis for discipline.[5] The repayment agreement provides that failure to repay any amounts claimed to be owed to the City "may be grounds for disciplinary action.” Although the Board conceded that this "right to take disciplinary action is a management prerogative [of the City] under NYCCBL § 1173-4.3b”, it nevertheless concluded that the City’s policy was a term or condition of employment which must be bargained because it "imposes the non-payment of City debt as an on-going predicate for disciplinary action” (Board of Collective Bargaining Decision No. B-7-87, at 22-23, citing Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23).
In the City of Binghamton case, we held (supra, at 28) that "disputes relating to whether the necessary predicate exists for taking disciplinary action against a public employee and the proper penalty to be imposed if that predicate exists are terms and conditions of employment under the Taylor Law”— i.e., that certain disciplinary matters, such as disciplinary procedures and penalties, are terms and conditions of employment (see, e.g., Matter of Auburn Police Local 195 v Helsby, 62 AD2d 12, affd 46 NY2d 1034). But we have never held that a simple statement that breach of a qualification for employment may in principle be disciplined constitutes a "term and condition of employment.” Indeed, such a holding would be contrary to the clear language of New York City’s Collective Bargaining Law relegating such determinations to the employer (see, Administrative Code § 12-307 [b]).
Accordingly, I agree with the Appellate Division that the repayment agreement implemented an appropriate measure of applicant’s character qualifications and, as such, was not subject to mandatory bargaining. I would, therefore, affirm its order.
*138 Chief Judge Wachtler and Judges Titone and Hancock, Jr., concur with Judge Kaye; Judge Simons dissents in part and votes to affirm in a separate opinion in which Judge Bellacosa concurs; Judge Alexander taking no part.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. For example, the City’s brief states that approximately 25,690 City employees, including 1,300 employees of the Department of Transportation, owed a total of $5.7 million in outstanding parking fines. Looking only to those, and excluding other forms of debts, roughly 10% of City employees owed the City money for this type alone.

. I would note that — unlike common subjective assessments of character based on appearance, reputation and other intangibles — the City’s policy was both objective and uniformly applied: Those who acknowledged their debts to the City and arranged to pay them were eligible for employment or promotion; those who refused were not.

. The majority contends that the dissenters have substituted their discretion for that of the Board by determining in "retrospect” that the policy serves as a legitimate measure of character and reputation (majority opn, at 129, n 3). On the contrary, we find the Board’s determination irrational because the Board has ignored the indicia of character qualifications in the City’s policy and instead relied on evidence of subjective intent to support its determination. The inference to be drawn from the majority’s acceptance of the Board’s finding, based on this evidence, is that if the City had stated that the policy was a test of character, the outcome would be different. It is difficult to see why the City’s purpose should be determined by self-serving public statements when the character aspects of the City’s policy are manifest.

. It is notable that although section 12-307 of the Collective Bargaining Law provides that wages are within the scope of collective bargaining, it does not specifically state that payroll deductions are also, except in the limited circumstance in which the deduction covers union dues for nonmembers of the pertinent union.

. The majority found it unnecessary to reach this issue.